DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant Robert J. Riccota has appealed from two rape convictions in the Lorain County Common Pleas Court. He has argued that: (1) the trial court incorrectly denied his motion to suppress statements he had made to a police officer; and (2) the trial court incorrectly allowed statements allegedly made by the victim to be admitted as excited utterances.[1] This Court affirms the judgment of the trial court because: (1) the trial court correctly denied defendant's motion to suppress; and (2) the admission of the alleged victim's statements was harmless beyond a reasonable doubt.
 I.
On March 3, 1996, defendant was indicted on two counts of rape, violations of Section 2907.02(A)(1)(b) of the Ohio Revised Code. According to the alleged victim, S., who was defendant's eight-year-old stepdaughter at the time of the alleged rapes, defendant and S. spent a night together in early July 1995, while S.'s mother was staying with S.'s brother in the hospital. Defendant allegedly invited S. to sleep in his bed with him, which S. agreed to do. While they were in bed, defendant allegedly performed cunnilingus on S. and made S. perform fellatio on him. She told no one until November 1995. During August 1995, S.'s mother separated from defendant. S., her brother, and her mother moved in with S.'s aunt. On November 28, 1995, S. was playing with her male cousin in her aunt's house. He asked her to undress and lie down, and he lay on top of her. S.'s aunt found them doing this and had a talk with S. S. then revealed to her aunt the alleged incidents of July 1995. Later that day, when S.'s mother returned from work, S. was "crying hysterically" and told her mother about the alleged incidents involving defendant.
On January 11, 1996, defendant received a telephone call from an officer of the North Ridgeville Police Department requesting that he come to the police station for a meeting regarding the allegations. Defendant agreed and went to the station just before 11:00 a.m. At the time, the police station was set up temporarily above a pool hall on Lorain Road while construction was being done on the main station. The officer told defendant that he was not under arrest and that he was free to leave, and then described the allegations to him. According to the officer, defendant at first denied the allegations. When asked to take a computerized voice stress analyzer examination, defendant said he would not unless he talked to an attorney first. The officer offered to let defendant use a telephone, which defendant refused. The officer again related the allegations to defendant and, as he mentioned S.'s statement that she was undressed during the alleged incidents, defendant allegedly stated, "Okay, it happened, but I never took her clothes off." When the officer asked for clarification of that statement, defendant allegedly said that the incidents had happened on a waterbed, that he had licked S.'s vagina one time and that she had licked his penis. Defendant was then presented with a Voluntary Statement form containing Miranda warnings and waivers, which the officer read to him and asked him to sign. When asked if he had any questions about the form, defendant answered that he did not. He wrote out and signed the following statement on the form: "Date unknown: A one time occurrence between S. and I (stepfather) happened. Each of us touched each other's privates with our tongues."
Defendant moved the trial court to suppress all statements he had made to the officer, claiming that he had not been givenMiranda warnings before questioning; that the officer had made false promises to him to induce a confession; and that, therefore, his statements had been unlawfully obtained. A hearing was held, and the trial court denied the motion. Defendant was tried to a jury, during which S.'s mother was permitted, over defendant's objections, to relate statements S. had allegedly made to her on November 28, 1995, regarding the alleged rapes. S. also testified, as did the officer who had interviewed defendant. Defendant was found guilty of both counts of rape. He timely appealed to this Court.
 II. A.
Defendant's first assignment of error is that the trial court incorrectly denied his motion to suppress statements he had made to a police officer. According to defendant, he was not allowed to leave the police station until he gave a statement, was not given any Miranda warnings prior to questioning, and even asked for an attorney while he was there; he was, therefore, improperly subjected to custodial interrogation. In addition, he has argued, his statements were rendered involuntary by the officer's false statements to him that there was a "strong possibility" that he could receive counseling instead of being criminally prosecuted and that he would not be arrested if he made a statement.
"Only custodial interrogation triggers the need for Miranda
warnings." See State v. Biros (1997), 78 Ohio St.3d 426, 440, citing Oregon v. Mathiason (1977), 429 U.S. 492, 495,50 L.Ed.2d 714, 719. A person is in custody when there is a formal arrest or a restraint on freedom of movement that is of the degree associated with a formal arrest. California v. Beheler (1983),463 U.S. 1121, 1125, 77 L.Ed.2d 1275, 1279. Neither the subjective intent of the law enforcement officer nor the subjective belief of the defendant has any bearing on the determination of whether a defendant was in custody. Berkemer v.McCarty (1984), 468 U.S. 420, 442, 82 L.Ed.2d 317, 336. Rather, the only relevant inquiry is how, under the totality of the circumstances, a reasonable person in the defendant's position would have understood his situation. Id. at 442,82 L.Ed.2d at 336.
Defendant's argument that he was subjected to custodial interrogation is unsupported. In this case, the officer testified that he had asked defendant to come for an interview, that he had told defendant when he arrived that he was not under arrest and that he was free to leave, and that defendant had admitted to raping S. while the officer was describing the allegations against him. No evidence was presented at the suppression hearing that the officer told defendant that he would not be free to leave until he gave a statement or that defendant was, in fact, not free to leave until he did so.[2] Furthermore, according to the officer's testimony, defendant did not actually request to speak with an attorney. Defendant's only reference to an attorney was when he was asked to take a voice stress analyzer examination, to which he replied that he would have to speak with an attorney before doing so. Defendant refused an offer to use a telephone after he made that statement. The voice test was never administered to him.
Defendant's argument that the officer made false statements to him to induce involuntary statements is likewise unsupported. Defendant asked the officer on cross-examination whether he had told defendant during the interview about another case "that may have been similar to this where the people got counseling and everything was all right," and the officer testified that it was possible but that he did not recall telling defendant about another case. This evidence does not establish that defendant's statements were involuntary because the officer "lied to [him] by stating that counseling would be a strong possibility in [his] case as opposed to criminal prosecution," as defendant has argued. Furthermore, the officer was not asked whether he had told defendant he would not be arrested if he made a statement, nor was the issue otherwise raised at the suppression hearing.
Defendant has failed to demonstrate that the trial court incorrectly denied his motion to suppress. The evidence at the suppression hearing did not support defendant's assertion that he was subjected to custodial interrogation or his assertion that the officer made false promises to him to induce involuntary statements. His first assignment of error is, therefore, overruled.
 B.
Defendant's second assignment of error is that the trial court incorrectly allowed statements allegedly made by the victim to be admitted as excited utterances. Rule 52(A) of the Ohio Rules of Criminal Procedure provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Erroneously admitted evidence in criminal proceedings is harmless if there is no reasonable possibility that the failure to exclude it may have contributed to the defendant's conviction, and a reviewing court may declare an error to be harmless if it is harmless beyond a reasonable doubt. State v.Sibert (1994), 98 Ohio App.3d 412, 428-29, citing Chapman v.California (1967), 386 U.S. 18, 17 L.Ed.2d 705, and State v.Bayless (1976), 48 Ohio St.2d 73, vacated on other grounds,438 U.S. 911, 57 L.Ed.2d 1155.
In this case, S. was deemed competent to testify. She testified at trial that "[her] stepfather licked [her] private parts," that another word for her private parts was "vagina," that he "made [her] suck his private part," that she was "scared" when she did this, and that defendant had "told [her] it was a secret and he didn't want [her] to tell anyone. Also during her testimony, she drew a circle around the penis of a male figure drawn on paper to indicate what she meant by his "private part." The police officer who had interviewed defendant also testified that defendant admitted orally and in writing to the two acts of rape with which he was charged, the same acts that were independently related by S. to the jury. The testimony of S.'s mother about what S. told her on November 28, 1995, was merely repetitious of some of S.'s trial testimony:
 Q. Please start over again and tell the jury what [S.] told you.
 A. She told me that her stepfather had touched her.
Q. Did she say what he touched her with?
A. With his tongue.
 Q. Did she tell you that she was touched in any way by him — I am sorry, did she tell you that she had to touch him in any way?
A. Yes, she had to suck his penis.
 Q. As a result of these statements by [S.], what did you do?
A. I called the police * * *.
Given the detailed and overwhelming evidence against defendant presented by the testimony of S. and the officer who had interviewed defendant, this Court concludes that there is no reasonable possibility that the failure to exclude S.'s mother's testimony about statements made to her by S. may have contributed to the defendant's conviction. Defendant's second assignment of error is, therefore, overruled.
 III.
Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Lorain Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _______________________________ CLAIR E. DICKINSON
FOR THE COURT
SLABY, P. J.
REECE, J. CONCUR.
[1] Defendant's assignments of error have been rearranged for ease of discussion.
[2] Defendant has cited to the trial transcript several times to support his arguments concerning the trial court's denial of the suppression motion. This Court, however, may review only the evidence presented at the suppression hearing when reviewing defendant's claim that the trial court erred in denying his motion to suppress, because that was the only evidence the trial court had before it when it ruled on that motion.